IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **LEE SWIMMING POOLS, LLC, f/k/a**<br>**BAY POOL COMPANY, LLC** | **PLAINTIFF** |
| **v.** | **CAUSE NO. 1:18-cv-118-LG-RPM** |
| **BAY POOL COMPANY**<br>**CONSTRUCTION, LLC** | **DEFENDANT/COUNTER-**<br>**PLAINTIFF** |
| **v.** | |
| **LEE SWIMMING POOLS, LLC, f/k/a**<br>**BAY POOL COMPANY, LLC** | **COUNTER-DEFENDANT** |
| **BAY POOL COMPANY**<br>**CONSTRUCTION, LLC**<br>**v.** | **THIRD-PARTY PLAINTIFF** |
| **JOEL LEE, individually and as the**<br>**agent/member of LEE SWIMMING**<br>**POOLS, LLC; ISLAND VIEW**<br>**POOLS, LLC; and JOEL**<br>**BUCHANAN, individually and as**<br>**the agent/member of ISLAND VIEW**<br>**POOLS, LLC** | **THIRD-PARTY DEFENDANTS** |

<u>**FINDINGS OF FACT AND CONCLUSIONS OF LAW UPON ISSUES TRIED**</u>
<u>**WITHOUT A JURY PURSUANT TO FED. R. CIV. P. 52**</u>

**THIS CAUSE** came before the Court on March 22 and 23, 2021, for trial

without a jury pursuant to Fed. R. Civ. P. 52.  This is a diversity case requiring the

application of the law of the State of Mississippi.  *See Erie Railroad Co. v.*

*Tompkins*, 304 U.S. 64 (1938).  After careful consideration of the testimony

presented at trial and the exhibits introduced into evidence, the Court finds that

1

Lee Swimming Pools, LLC ("Lee Swimming Pools") has proven its breach of contract cause of action against Bay Pool Company Construction, LLC ("BPCC"). The Court further finds that Lee Swimming Pools is entitled to a judgment against BPCC in the amount of $96,988.10, which represents the undisputed remaining balance on the contract purchase price. By a preponderance of the admissible evidence, the parties' remaining claims are unproven and will be dismissed with prejudice.

## PROCEDURAL HISTORY AND NATURE OF CLAIMS

Plaintiff, Lee Swimming Pools, sues Defendant, BPCC, for the remaining balance on a $200,000 Asset Purchase Agreement. The seller, Lee Swimming Pools, was formed by owner Joel Lee and originally called Bay Pool Company, LLC ("Bay Pool Company"). In March 2016, Lee sold the assets of Bay Pool Company to Adam Landrum, who ran the business as Bay Pool Company Construction, LLC. The contract provided for a $50,000 down payment, with the remaining $150,000 to be paid by monthly payments calculated from monthly sales and supplier rewards. (Agmt., § 18, Ex. J-1).

On February 10, 2018, Lee Swimming Pools commenced this action, alleging that BPCC stopped making the required payments in August 2017, when the outstanding balance was $96,988.10. Lee Swimming Pools' remaining claims against BPCC are for breach of contract and breach of the implied duty of good faith and fair dealing.

2

On May 31, 2018, BPCC answered and counterclaimed for damages allegedly sustained by Lee Swimming Pool's separate violation of the Agreement.  The counterclaim invokes a "restrictive covenant" contained in the Agreement, which is a quasi-noncompete clause restricting Lee from building or maintaining pools in Mississippi and Louisiana.  BPCC alleges that Lee Swimming Pools violated this covenant and that it is excused from paying the remaining balance of the contract purchase price due to the alleged material breach.  As such, BPCC's remaining claims against Lee Swimming Pools are for breach of contract and breach of the implied duty of good faith and fair dealing.

Finally, by Third-Party Complaint, BPCC seeks damages from Third-Party Defendants Joel Lee, individually and as the agent/member of Lee Swimming Pools, LLC, Island View Pools, LLC ("Island View"), and Joel Buchanan, individually and as the agent/member of Island View.  BPCC accuses these parties of tortiously interfering with its contract with Lee Swimming Pools and inducing Lee to violate the restrictive covenant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I.    Breach of Contract Claims

Lee Swimming Pools and BPCC have asserted claims for breach of contract against each other.  "The Mississippi Supreme Court has stated that a breach of contract case has two elements: (1) 'the existence of a valid and binding contract,' and (2) a showing 'that the defendant has broken, or breached it.'"  *Winters v. Feng*,

--- So. 3d ---, 2020 WL 6582066, at *5 (Miss. Ct. App. Nov. 10, 2020) (quoting *Maness v. K&A Enters. of Miss. LLC*, 250 So. 3d 402, 414 (Miss. 2018)).  There is no dispute in this case that there is a valid and binding contract[1]; the issue is thereby simplified to whether the contract was breached and by whom.

As for the question of BPCC's breach, the Court has previously decided that "[t]here is no dispute that BPCC did not pay the full amount due under the Agreement, and thus no question that it breached the Agreement."  *Lee Swimming Pools, LLC v. Bay Pool Co. Constr.*, No. 1:18CV118, 2020 WL 2063865, at *3 (S.D. Miss. Apr. 29, 2020).  Further, the parties stipulated that BPCC "has paid $103,011.90 of the total contract price," "has not made any payments toward the contract balance since August 1, 2017, and, thus, has breached the agreement." (Pretr. Order, ¶¶ 9(a)(2)-(3), ECF No. 132).  However, BPCC responds that it is excused from satisfaction of the purchase price by Lee Swimming Pool's own material breach of the Agreement.  Hence, the ultimate resolution of these claims turns on whether Lee Swimming Pools breached the Agreement, and, if so, whether that breach was material.

"The termination of a contract is only permitted if there is a material breach." *Winters*, 2020 WL 6582066, at *5 (citing *Watkins Dev. LLC v. Jackson Redev. Auth.*, 283 So. 3d 170, 174-75 (Miss. 2019)); *see also Favre Prop. Mgmt., LLC v. Cinque*

---

[1] The parties stipulated that "Lee Swimming Pools, LLC and Bay Pool Company Construction, LLC entered into a contract for purchase and sale of the construction and maintenance company, as well as the assets of Bay Pool.  The contract price was $200,000.00."  (Pretr. Order, ¶ 9(a)(1), ECF No. 132).

*Bambini*, 863 So. 2d 1037, 1044 (Miss. Ct. App. 2004) ("[A] party's material breach of a bilateral contract excuses further performance by the other party."). To determine whether a breach is material, the Court finds the following language pertinent:

> A breach is material when there "is a failure to perform a substantial part of the contract or one or more of its essential terms or conditions, or if there is such a breach as substantially defeats its purpose," *Gulf South Capital Corp. v. Brown*, 183 So. 2d 802, 805 (Miss. 1966), or when "the breach of the contract is such that upon a reasonable construction of the contract, it is shown that the parties considered the breach as vital to the existence of the contract," *Matheney v. McClain*, 248 Miss. 842, 849, 161 So. 2d 516, 520 (1964).

*Winters*, 2020 WL 6582066, at *5 (quoting *Watkins Dev.*, 283 So. 3d at 174-75). "Materiality is ordinarily a question of fact, . . . albeit one of ultimate fact, not evidentiary fact.  The standard for determining materiality must necessarily be both 'imprecise and flexible' to 'further the purpose of securing for each party his expectation of an exchange of performances.'" *UHS-Qualicare, Inc. v. Gulf Coast Comm. Hosp., Inc.*, 525 So. 2d 746, 756 (Miss. 1987).

### A.    Alleged Breach of Section 8

The Court begins by reading the Agreement.  BPCC cites two clauses of the Agreement in accusing Lee Swimming Pools of a material breach.  First, BPCC alleges that Lee Swimming Pools violated what it calls a "noncompete clause" located in § 8 of the Agreement.  This provision is actually labeled a "Restrictive Covenant" and reads thus:

> 8. RESTRICTIVE COVENANT: SELLER AGREES TO DISCONTINUE AND REFRAIN FROM PROVIDING SWIMMING

POOL CONSTRUCTION AND MAINTENANCE FOR A PERIOD OF
FIVE (5) YEARS BEGINNING AS OF THE EXECUTION DATE OF
THIS AGREEMENT.  THIS MEANS THAT SELLER SHALL NOT
CONSTRUCT, OPERATE A SWIMMING POOL CONSTRUCTION
OR MAINTENANCE BUSINESS IN THE STATES OF MISSISSIPPI
OR LOUISIANA, IN ANY CASE, FOR A PERIOD OF FIVE (5) YEARS
SUBSEQUENT TO THE DATE OF THIS AGREEMENT WITH THE
FOLLOWING EXCEPTIONS:

> A. THIS AGREEMENT ONLY PERTAINS TO THE STATES
> OF MISSISSIPPI AND LOUISIANA.

> B. SELLER WILL KEEP POOL RETAIL STORE.

(Agmt., § 8, Ex. J-1).

BPCC contends that Lee Swimming Pools violated this provision by
performing pool construction and maintenance services in the restricted area.  In
the opinion of the Court, the evidence adduced at trial fails to support BPCC's
contention.  Lee testified that he did not construct or maintain any pool in the
states of Mississippi or Louisiana or operate or invest in any pool business.  (Tr.,
Vol. I, 36:2-11).  He also testified that he neither invested in nor was affiliated with
Island View Pools, the pool construction company of his friend Joel Buchanan.  (*Id.*
at 36:9-16).  BPCC counters this testimony with various evidence, which will be
discussed below.

BPCC first offers evidence of Lee's advertising and referral activity following
the sale.  Specifically, BPCC points to Lee's private texts to Landrum in late 2016
that he knows "the money that flows from pools" and that he wanted to "take
advantage" of activity in the pool business.  (*See* Ex. J-3 at 10).  Lee first formed a
pool construction and maintenance company called "Bay Pool Company" in 2012.

6

(Tr., Vol. I, 28:4-29:1).  After his 2016 sale of those assets to Landrum, who then ran the business as "Bay Pool Company Construction," Lee continued to operate a pool construction business under the name "Lee Swimming Pools."  (*Id.* at 28:3-16).  This business described Mobile, Alabama as its "primary build area" (Ex. D-12 at 26), which is outside the restricted area of the Agreement.  (Agmt., § 8, Ex. J-1).  Per the Agreement (*Id.*), Lee also continued to run a pool retail store after the sale.  (Tr., Vol., I, at 29:2-9).

In March 2017, Landrum accused Lee of advertising Mississippi pools and "jamming out on with Mississippi pools on [his] website."  (Ex. J-3 at 54).  The next day, in an email entitled "The Mess," Lee acknowledged his advertising in Mississippi, promised to "adjust the website shortly," and advised that desiring "web traffic from the area doesn't mean [he's] competing for sure."  (*See* Ex. D-17).  Subsequently, in early summer 2017, Lee Swimming Pools posted a photograph of a recently built pool on its Facebook page, the caption indicating that it had been constructed "this summer" in Diamondhead, Mississippi.  (*See* Ex. D-12 at 18).  At trial, Buchanan explained that Lee occasionally used photographs of Island View pools to advertise his pool services in Alabama.  (Tr., Vol. I, 72:11-16).  BPCC also submits a hazy screenshot showing that Lee Swimming Pools' website appeared to mention Mississippi inground pool construction services in July 2017.  (*See* Ex. D-12 at 26).  This website evidence, at most, boasts its availability in the Mississippi

area,[2] but it falls far short of proving by the preponderance standard, that the business at any time violated the restrictive covenant.

Further, there is evidence that some customers would continue to call the number for Lee's pool retail store, which he was contractually permitted to operate (Agmt., § 18, Ex. J-1), believing it was the number for Lee's original pool construction company, the similarly named "Bay Pool Company."[3]  (*See* Tr., Vol. I, 89:3-21; 108:25-109:9).  The contract required Lee Swimming Pools to refer customers to BPCC for an initial 30-day period after the sale.  (Agmt., § 3, Ex. J-1). According to the testimony, Lee referred all customers to BPCC for the first year of the contract, but at some time in 2017 he began to direct these callers to Island

---

[2] The text is difficult to read, but the advertisement does not necessarily imply that it currently services Mississippi; the text apparently reads that it "has been constructing inground swimming pools in the Mississippi, Alabama, and Louisiana areas for 20 years."  (*Id.*).  It also describes Mobile, Alabama as the "primary build area" of its market.  (*Id.*).  Again, the Court cannot conclude on this evidence that Lee Swimming Pools at any time constructed a pool in the restricted area.

[3] Describing a conversation that was ruled to be hearsay, Whittney Landrum, the wife of Adam Landrum, testified that, in early 2017, a customer contacted BPCC's business page on Facebook and recounted an earlier phone call to a 228-area code number, where a man quoted a price for their proposed pool in Wiggins, Mississippi. (Tr., Vol. I, 106:23-107:13).  BPCC alleges that this customer probably called Lee's original number for BPC, as no one from BPCC had spoken to her.  (*Id.*).  Buchanan could not remember constructing a pool in Wiggins, so BPCC deduces that Lee must have constructed the Wiggins pool himself.  (*Id.* at 73:1-2).  Even were this evidence admissible, the Court could not agree with the uncertain conclusion that Lee personally constructed the caller's pool in Wiggins; there is no corroboration as to the identity of the man who quoted the price nor who ultimately constructed the pool, if at all.

View instead.[4]  (*See id.* at 33:14-23; 156:16-18; 157:6-16).  While such acts—
advertising in Mississippi and failing to refer customers to BPCC—may have
damaged the parties' friendly and even familial relationship, and redirected
business from BPCC, they do not amount to "Swimming Pool Construction or
Maintenance".[5]  (*See* Agmt. § 8, Ex. J-1).

There are also suggestions that Lee worked with Buchanan to violate the
restrictive covenant.  BPCC submits screenshots from May 2017 showing Buchanan
responding to customer requests on Lee Swimming Pools' Facebook page, referring
to "our pools" and implying that he would service north Mississippi.  (*See* Ex. D-20).
This occurred before Island View Pools was created.  (Tr., Vol. I, 113:2-6).  This
evidence is likewise unconvincing and does not rise to the required preponderance
standard. Although Buchanan's responses to customers on Lee Swimming Pools'
page may indicate his willingness to build pools in north Mississippi, there is no
testimony that Lee Swimming Pools *itself* pursued this lead and constructed a pool
there.

BPCC points to evidence that, in September 2017, Joel Buchanan obtained a
Bay Saint Louis permit with Joel Lee's contractor license for the construction of a
pool at the residence of Mr. John Montalbano.  (Ex. J-4; Tr., Vol. I, 63:6-69:21).  The

---

[4] Joel Buchanan, the owner of Island View Pools, testified that he never paid Joel
Lee for any referrals or business.  (Tr., Vol. I, 62:7-20).

[5] The Court has already held that the Agreement "does not prohibit Lee Swimming
Pools from advertising, nor does it require Lee Swimming Pools to refer any pool
construction inquiry to BPCC beyond an initial thirty-day transition period."  *Lee
Swimming Pools*, 2020 WL 2063865, at *5 (citations omitted).

permit application lists Lee Swimming Pools as the applicant.  (Ex. J-4 at 4-5).

Although BPCC insists that this act evinces a business relationship, Buchanan and

Lee both testified that this act was performed without Lee's knowledge.  (*Id.* at

37:12-38:15; 63:16-69:21).  Buchanan explained that he signed Lee's name to the

permit for his independent use (*Id.* at 64:13-65:8), believing that "it would be easier

to ask for forgiveness, or beg for forgiveness, versus permission."  (*Id.* at 63:20-23).[6]

Beyond some bare speculation that Joel Lee himself signed the application (*Id.* at

145:4-147:11), there is no indication in the record that Lee was involved in the

erroneous issuance of this permit.  Buchanan provided his own phone number on

the application because he "didn't want them calling Joel [Lee] asking questions

about the job because I knew he didn't know anything about it."  (*Id.* at 64:9-16).

The Court concludes that Lee Swimming Pools cannot be held responsible for this

faulty permit.

In addition to Mr. Montalbano's job, Buchanan testified that he used Lee's

license to obtain a permit for the construction of a pool at Mr. Mark Chadwick's

home in Diamondhead, Mississippi.  (*Id.* at 68:25-69:4).  In November 2017,

Whitney Landrum observed and photographed Buchanan retrieving equipment

from Lee's retail store and using it to construct Mr. Chadwick's pool.  (*Id.* at 123:21-

127:25).  The subject photographs were placed into the record and appear to accord

with Ms. Landrum's testimony.  (*See* Ex. D-21).  Again, viewed through the lens of

---

[6] Buchanan also testified that he may have constructed multiple pools without the
required permits in Mississippi.  (Tr., Vol. I, 69:13-15; Vol. II, 6:2-8).

the "more likely than not" preponderance standard, the Court cannot discern a

violation of the contract in this evidence.  Ms. Landrum's testimony does not

describe Lee performing any act in breach of the restrictive covenant,[7] nor do the

photographs depict Lee constructing the observed pool in tandem with Buchanan.

In fact, Buchanan testified that he never paid Lee for any pool jobs or referrals.[8]

(*Id.* at 70:21-71:12; *see also* Vol. II, 16:18-19).

        In the opinion of the Court, the totality of the evidence offered by BPCC

amounts to suspicion that Joel Lee or Lee Swimming Pools operated a clandestine

pool construction business within the restricted area, as forbidden by the parties'

---

[7] The Court does not agree with Ms. Landrum's position that Lee's mere act of loaning equipment constitutes "pool construction or maintenance" as regulated by the Agreement.  (*See* Tr., Vol. I, 136:15-25).  Even if Lee had received payment for the use of his equipment, the Court would be skeptical of such a broad construction of the restrictive covenant.  As stated in a prior Order: "[t]he Agreement does not prohibit Joel Lee from allowing others to use his equipment, and he has a lawful right to do so."  *Lee Swimming Pools*, 2020 WL 2063865, at *5.  Even then, there is no evidence of payment to Joel Lee for any contribution to the construction of this pool.  (Tr., Vol. I, 147:18-25).

[8] Andrea Bourgeois, the Lee Swimming Pools bookkeeper, attested to a payment made in 2016 to Buchanan, but the reason for the payment was unclear, though she recalled its classification as subcontract labor.  (*See* Tr., Vol. I, 45:22-46:13; 47:22-48:18; 54:16-55:13).  Without any elaboration, the Court does not find this testimony useful.  Later, BPCC offered into evidence a $3,000.00 check from January 2018 bearing Joel Lee's name and signature and made out to Joel Buchanan.  (Ex. D-24).  Lee identified the check and described it on cross-examination as a loan to Buchanan for the latter's engagement ring.  (*See* Tr., Vol. II, 27:20-28:3).  After trial, Lee Swimming Pools, Island View, Buchanan and Lee [148] moved to strike this exhibit, claiming that BPCC never produced the check in discovery, failed to file Proofs/Returns of Service, and obtained it in violation of the Magistrate Judge's [119] Protective Order.  Because the Court reaches a result favorable to Lee Swimming Pools irrespective of the admissibility of this exhibit, the [148] Motion to Strike Exhibit D-24 will be denied as moot.

Agreement.  The Court does not doubt the sincerity of BPCC's suspicions.  But a party's subjective belief that something has occurred, not matter how sincere, does rise to the preponderance of the evidence standard require to prove a breach of the Agreement.  Therefore, the Court finds that BPCC has failed to show by a preponderance of the evidence that Lee Swimming Pools breached § 8 of the Agreement.

### B.    Alleged Breach of Section 4

BPCC also alleges that Lee Swimming Pools breached § 4 of the Agreement. This provision reads:

> 4. SELLER WARRANTS GOOD TITLE, FREE AND CLEAR FROM
> ALL LIENS OR ENCUMBRANCES, TO THE ASSETS BEING SOLD
> TO THE BUYER (SEE SCHEDULE "A") EXCEPT FOR LIENS
> 1LISTED IN SCHEDULE "B".

(Agmt. § 4, Ex. J-1).  Schedule "B" does not list any liens.  (*Id.* at 8).  At trial, Ms. Landrum testified that one of the assets sold, the gooseneck trailer, had not been fully paid and remained burdened by a lien.  (*See* Tr., Vol. I, 100:1-13).  However, the Agreement also states that the gooseneck trailer would be "TITLED AND FINANCED IN THE PURCHASERS NAME."  (Agmt., 8, Ex. J-1).  The parties' dispute centers not on the existence of the lien but on the correct interpretation of their Agreement.

Mississippi follows "a three-tiered approach to contract interpretation." *Tupelo Redevelopment Agency v. Abernathy*, 913 So. 2d 278, 283 (Miss. 2005) (quoting *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 351-53 (Miss. 1990)).  The

Court must first read "the language that the parties used in expressing their agreement" within the four corners of the document. *Id.* "This so-called 'four corners' doctrine calls for construction through application of 'correct English definition and language usage.'" *Pursue Energy Corp.*, 558 So. 2d at 352. Second, if the four corners test fails, the Court should apply canons of contract construction; third, "if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence." *Tupelo Redevelopment Agency*, 913 So. 2d at 284. "[I]t is a question of law for the court to determine whether a contract is ambiguous." *Id.* at 283.

Beginning with the four corners of the parties' Agreement, the Court must "'read the contract as a whole, so as to give effect to all of its clauses.'" *Gaiennie v. McMillan*, 138 So. 3d 131, 135-36 (Miss. 2014) (quoting *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So. 2d 107, 111 (Miss. 2005)). Here, § 4 of the Agreement warrants good title and freedom from liens and encumbrances except for those listed in Schedule "B," which is empty. (Agmt., § 4, Ex. J-1). In Schedule "A," the gooseneck trailer is listed, with a parenthetical that it "BE TITLED AND FINANCED IN PURCHASERS NAME." (*Id.* at 8). At the four-corners stage, the Court interprets the document holistically, giving effect to each clause and reading it in light of the others. *Gaiennie*, 138 So. 3d at 135-36. While no liens are listed in Schedule "B," the warranty of good title and freedom from liens in § 4 of the Agreement may be read in light of the nuance contained in the parenthetical in

13

Schedule "A," such that both are given effect.  The warranty is thereby subjected to the specification that the gooseneck trailer be financed in BPCC's name.

However, out of an abundance of caution, the Court will apply the discretionary canons of construction.  A few stand out in importance.  One canon teaches that "uncertainties should be resolved against the party who prepared the instrument."  *Pursue Energy Corp.*, 558 So. 2d at 352-53 (citing *Clark v. Carter*, 351 So. 2d 1333, 1334-36 (Miss. 1977)).  Joel Lee testified that the contract was prepared in his office with Landrum present.  (*See* Tr., Vol. I, 30:3-18).  Lee sat at the computer, but the two apparently engaged in discussion before making changes. (*Id.*).  The Court cannot easily identify the drafter and will therefore exercise its discretion in assigning little weight to this canon.

Another canon teaches "that 'specific language controls over general inconsistent language in a contract.'"  *Harris v. Harris*, 988 So. 2d 376, 379 (Miss. 2008); *see also Estate of Parker v. Dorchak*, 673 So. 2d 1379, 1382 (Miss. 1996) (explaining "the canon that specific clauses in a contract are to be given greater weight than general ones").  Here, the contractual assurance that the gooseneck trailer would be free from debt is a general warranty of "good title" and freedom from liens and encumbrances, which applies to all assets.  (Agmt., § 4, Ex. J-1).  Yet the annotation that the trailer is to be titled and financed in the purchaser's name was specifically annexed to this single asset.[9]  (*Id.*).  Accordingly, the Court finds

---

[9] There was some testimony that Joel Lee assured the Landrums that the gooseneck trailer would be free of debt.  (Tr., Vol. I, 150:4-15).  However, the Court is bound by

14

that the parenthetical inserted next to the gooseneck trailer governs over the more generalized warranty.

As such, the Court cannot vary the terms of the contract from its explicit wording, which contemplates that the trailer be titled and financed in BPCC's name.  (Agmt., 8, Ex. J-1).  The Court finds that the delivery of the apparently encumbered gooseneck trailer did not violate the contract.[10]  The Court also finds that Lee Swimming Pools did not commit a breach of the contract, material or otherwise, which would void BPCC's contractual payment obligation or entitle it to damages.[11]

---

the written word of the contract, which provides that it "REPRESENTS THE FULL UNDERSTANDING OF THE PARTIES."  (Agmt., § 11, Ex. J-1).  The Court may only consider parol evidence if the contract continues to evade clarity after applying canons of construction.  *Tupelo Redevelopment Agency*, 913 So.2d at 284.

[10] Even were this encumbrance a breach, the Court would not necessarily find it a material one.  In certain cases, a party's breach of covenants warranting freedom from liens or encumbrances has been held to be material.  *See Wilson v. Ameriquest Mortg. Co.*, No. 5:05CV122-DCB-JMR, 2006 WL 2594522, at *5 (S.D. Miss. Sept. 8, 2006) (holding that the plaintiff borrowers' violation of a warranty covenanting "that Borrower is lawfully seised of the estate hereby conveyed and the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record" was a material breach, as the borrowers "made this covenant and pledged the Tipton Lane house as collateral after he knew that the house was sold at a foreclosure sale") (citing *Ferrara v. Walters*, 919 So.2d 876 (Miss. 2005)).  In *Wilson*, the real property warranted to be unencumbered was the subject of the loan agreement.  2006 WL 2594522, at *5.  Here, there is no evidence that the covenant against liens and encumbrances relative to the gooseneck trailer was a "substantial part" of the contract such that a breach justifies its termination.  *See Winters*, 2020 WL 6582066, at *5.  Hence, the delivery of an apparently encumbered gooseneck trailer, even if it violated the contract, would not necessarily amount to a material breach of same.

[11] There were also accusations in the record that Lee violated § 1 of the Agreement by failing to deliver rights to "Sun Pool Products," which are among the assets listed

In the opinion of the Court, BPCC owes Lee Swimming Pools the remainder of the undisputed balance on the Asset Purchase Agreement, which is $96,988.10.[12] (Pretr. Order, ¶ 9(a)(2), ECF No. 132).

## II.    Breach of Implied Duty of Good Faith and Fair Dealing Claims

BPCC and Lee Swimming Pools also maintain claims for breach of the implied duty of good faith and fair dealing against one another.  The Mississippi Supreme Court describes this type of claim as follows:

> All contracts carry an inherent covenant of good faith and fair dealing. *Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992).  "Good faith is the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party.  The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness."  *Id.*  The covenant holds that "neither party will do anything which injures the right of the other to receive the benefits of the agreement."  *Cothern v. Vickers*, 759 So. 2d 1241, 1248 (Miss. 2000).  The covenant imposes a duty not to prevent or hinder the other party's performance, but may also impose a duty "to take some affirmative steps to cooperate in achieving these goals."  *Cenac*, 609 So.2d at 1272.

*Ferrara v. Walters*, 919 So. 2d 876, 883 (Miss. 2005).

Moreover, bad faith "requires a showing of more than bad judgment or negligence; rather, 'bad faith' implies some conscious wrongdoing 'because of

---

in Schedule "A." (Tr., Vol. I, 151:25-12).  Ms. Whittney Landrum suggested that these rights were transferred to Joel Buchanan.  (*Id.* 151:5-9).  But there has been no evidence of this alleged transfer, or the materiality of an alleged breach, beyond this limited testimony—much less a presentation of damages on any loss sustained. With such sparse evidence, BPCC has not satisfied its burden of proof on this claim.

[12] The Agreement entitles the prevailing party to attorneys' fees and costs.  (Agmt., § 13, Ex. J-1).  Consideration of any claim for attorneys' fees should proceed in accordance with Fed. R. Civ. P. 54(d)(2), which requires that a claim for attorneys' fees be made by motion, filed no later than fourteen days after entry of judgment.

dishonest purpose or moral obliquity.'" *Univ. S. Miss. v. Williams*, 891 So. 2d 160,

170-71 (Miss. 2004) (citation omitted).  A breach of this implied duty "does not

require a breach of any express provision of the contract," *Jones v. Miss. Inst.*

*Higher Learning*, 264 So. 3d 9, 20 (Miss. Ct. App. 2018), but there can be no breach

"when the party only took actions duly authorized by the contract." *Gulf Coast*

*Hospice, LLC v. LHC Grp., Inc.*, 273 So. 3d 721, 745 (Miss. 2019).

 The Court finds that neither Lee Swimming Pools nor BPCC has proven facts

which rise to the level of "dishonest purpose or moral obliquity." *Univ. S. Miss.*, 891

So. 2d at 170-71.  The parties' relations deteriorated based on BPCC's suspicion that

Joel Lee was actively violating the restrictive covenant contained in § 8 of their

Agreement.  The Court has already rejected BPCC's claims in that respect.

Moreover, Joel Lee's advertising and referral practices, while not in BPCC's best

interest, do not amount to a breach of the implied duty of good faith and fair

dealing.  BPCC presented no evidence that Lee acted in a manner inconsistent with

or unfaithful to the purpose of the sale or committed any wrongful act against

BPCC.  As purchaser, BPCC evidently received the expected benefits of the

Agreement, including its physical and digital assets, an initial referral period,

training, and other favorable provisions.  The Agreement did not require Lee to

provide magnanimous support to BPCC thereafter,[13] and it does not restrict his

enterprising beyond the pool industry in Louisiana and Mississippi.  Hence, the

---

[13] The Court does note Joel Lee's testimony that he assisted BPCC beyond the
contractual 30-day period.  (Tr., Vol. I, 34:11-35:14).

Court must find in favor of Lee Swimming Pools as to BPCC's claim for breach of the implied duty of good faith and fair dealing.

Neither has Lee Swimming Pools shown that BPCC breached the same duty. Although BPCC ultimately failed to prove that Lee engaged in forbidden pool business, the Court cannot find its suspicion motivated by bad faith, dishonest purpose or moral obliquity. *See Univ. S. Miss.*, 891 So. 2d at 170-71. BPCC's suspicions were sincerely roused by Lee's apparent regret over the sale, and the discovery of a Bay Saint Louis pool construction permit carrying his forged signature only bolstered this mistrust. *See Lee Swimming Pools, LLC*, WL 2063865, at *6 ("Bay Pool Company's pool construction permit . . . indicates a direct violation of the Agreement."). These allegations, had they been vindicated, may have justified termination of the Agreement and nonpayment of the remaining balance, as, by all accounts, the restrictive covenant was a "substantial part" of the final arrangement. *Winters*, 2020 WL 6582066, at *5. The Agreement itself indicated that $50,000.00, or a quarter of the price, was allocated for its inclusion.[14]

---

[14] Additionally, BPCC reasonably believed that a breach of the restrictive covenant justifies nonpayment of the purchase price. Although the Court cannot locate a pertinent Mississippi case on the subject, other state supreme courts have found violations of noncompete clauses to be material breaches. *See, e.g., Van Oort Constr. Co., Inc. v. Nuckoll's Concrete Serv., Inc.*, 599 N.W.2d 684 (Iowa 1999); *Ellis v. Candia Trailers & Snow Equip., Inc.*, 58 A.3d 1164 (N.H. 2012) (finding that the noncompete agreement was "vital to the existence of the contract" and that a breach thereof "went to the heart of the transaction and constituted a material breach"); *see also Gary's Implement, Inc. v. Bridgeport Tractor Parts, Inc.*, 702 N.W.2d 355 (Neb. 2005) (finding that violation of a noncompete agreement could "excuse or reduce payment" and remanding the case for factual resolution of whether such breach occurred).

18

(Agmt., § 17, Ex. J-1).  While BPCC ultimately did not carry its burden of proof in this respect, the Court cannot find that BPCC committed a wrongful deed or acted for a dishonest end.

### III.    Tortious Interference with Contract Claims

Finally, BPCC has brought a claim of tortious interference with contract claims against Island View Pools, LLC, its sole member Joel Buchanan, and Joel Lee.  BPCC alleges that Island View Pools was created on June 14, 2017, by Buchanan and acted in concert with Lee to build pools covertly in the restricted area.  BPCC accuses Buchanan, Island View Pools, and Joel Lee himself of interfering with the contractual duty of Lee Swimming Pools to abstain from pool construction and maintenance in the restricted area.

"[A] claim of tortious interference with a business contract occurs 'when a person causes another to breach a contract with some third person.'"  *Campbell v. Cranford*, 737 So. 2d 1032, 1037 (Miss. 1999) (quoting *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998)).  "An action for tortious interference with contract ordinarily lies when a party maliciously interferes with a valid and enforceable contract, causing one party not to perform and resulting in injury to the other contracting party."  *Hollywood Cemetery Ass'n v. Board of Mayor & Selectman of City of McComb*, 760 So. 2d 715, 719 (Miss. 2000).

The tortious interference with contract plaintiff must prove: "(1) the acts were intentional and willful; (2) the acts were calculated to cause damage to the

19

plaintiffs in their lawful business; (3) the acts were done with the unlawful purpose

of causing damage and loss without right or justifiable cause on the part of the

defendant (which constitutes malice); and (4) actual loss and damage resulted."

*Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 458-59 (5th Cir. 2005) (quoting

*PDN, Inc. v. Loring*, 843 So. 2d 685, 688 (Miss. 2003)).[15]

   The Court has already found that Lee Swimming Pools did not breach the

restrictive covenant or any other provision of the Agreement.  Consequently, there

can be no action for tortious interference with contract based on the theory that a

third party caused Lee Swimming Pools to commit a breach.  *See Rosemont Gardens*

*Funeral Chapel-Cemetery, Inc. v. Trustmark Nat'l Bank*, 330 F.Supp.2d 801, 812

(S.D. Miss. 2004).  In *Rosemont*, this Court held that its determination that a

defendant bank "did not breach the lending agreement" foreclosed a tortious

interference with contract claim.  *Id.*  "The gravamen of a claim for tortious

interference with contract is proof that a defendant caused the breach of a contract

between the plaintiffs and a third party, *see Cenac v. Murry*, 609 So. 2d 1257 (Miss.

---

[15] "It must also be proven that the contract would have been performed but for the alleged interference," *Levens v. Campbell*, 733 So. 3d 753, 761 (Miss. 1999), and "that the defendant's acts were the proximate cause of the loss or damage suffered by the plaintiff." *Scruggs, Millette, Bozeman & Dent., P.A. v. Merkel & Cocke, P.A.*, 910 So. 2d 1093, 1099 (Miss. 2005).  Moreover, intent to interfere with the contract maliciously may be implied where "the defendant knew of the existence of a contract and did a wrongful act without legal or social justification that he was certain or substantially certain would result in interference with the contract." *Id.* But "'interference is not wrongful and actionable if undertaken by someone in the exercise of a legitimate interest or right, which constitutes privileged interference.'" *Id.* (quoting *Martin v. Texaco, Inc.*, 304 F. Supp. 498, 502 (S.D. Miss. 1969)).

1992), and that did not occur here." *Id.* Likewise, the determination that Lee Swimming Pools did not breach the Agreement disposes of the tortious interference claim.

**IT IS THEREFORE ORDERED AND ADJUDGED** that, for the reasons stated herein, Plaintiff and Counter-Defendant, Lee Swimming Pools, LLC, is entitled to recover from Defendant and Counter-Plaintiff, Bay Pool Company Construction, LLC, damages in the amount of $96,988.10.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [148] Motion to Strike Exhibit D-24 is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED AND ADJUDGED** that, for the reasons stated herein, all other remaining claims against Lee Swimming Pools, LLC, Bay Pool Company Construction, LLC, Joel Lee, Island View Pools, LLC, and Joel Buchanan, should be and are hereby **DISMISSED WITH PREJUDICE.** The Court shall enter a separate judgment pursuant to Fed. R. Civ. P. 58.

**SO ORDERED AND ADJUDGED** this the 2nd day of August, 2021.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE